UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO. 1:24-cr-93-JPH-KMB |
| NATHANIEL WILLS, | ) |
| Defendant. | ) |

FILED
2:27 pm, May 29, 2024
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

## INFORMATION

The United States Attorney charges that:

### General Allegations

At times material to this Information:

1. Company A is a retail flooring and installation services business located in the Southern District of Indiana.

2. NATHANIEL WILLS ("WILLS") resided in Anderson, Indiana, which is located in the Southern District of Indiana.

3. WILLS maintained at least two personal bank accounts at Huntington Bank, including: (1) a personal checking account ending in 0246; and (2) a personal savings account ending in 8766 (together, "WILLS' Personal Bank Accounts"). Huntington Bank is headquartered in Columbus, Ohio and maintains its servers in Ohio.

4. WILLS further maintained at least three personal credit cards with Chase Bank, including those ending in account numbers 2112, 9531, and 3703 (together, "WILLS' Personal Credit Card Accounts"). Chase Bank is headquartered in New York, New York and maintains

1

its servers outside of Indiana.

5. WILLS further maintained a personal PayPal account ("WILLS' PayPal Account").

6. Company A maintained two corporate bank accounts at First Merchants Bank: (1) a general operating account ending in 0238 ("First Merchants Operating Account"); and (2) a payroll account ending in 0262 ("First Merchants Payroll Account") (collectively, "First Merchants Accounts").  First Merchants Bank is a regional bank headquartered in Muncie, Indiana and maintains its servers in Indiana.

7. Company A further maintained a line of credit at First Merchants Bank.

8. On or about March 19, 2019, there was a PayPal account opened in the name of Company A ("Company A's PayPal Account").

9. Company A had a Citibank corporate credit card account ("Company A Citibank Credit Card Account").  Multiple Company A employees, including WILLS, had employee credit cards that were linked to the Company A Citibank Credit Card Account ("Company A Citibank Employee Credit Card").  Employees were authorized to use their Company A Citibank Employee Credit Card for certain legitimate business expenses only.

10. Transfers of funds between WILLS and Company A affected interstate commerce.

11. Beginning on or around March 7, 2016, to on or about May 1, 2018, WILLS was an accountant for Company A.  From on or about May 1, 2018, to in or around February 2022, WILLS was Director of Administration for Company A.  In these roles, WILLS was entrusted with performing business accounting functions at Company A, which included, among other things, writing and signing checks, making electronic payments, performing reconciliations

between Company A's accounting and banking records, and maintaining Company A's accounting ledgers.

12.   Company A collected, stored, and managed all of Company A's data from its business transactions, which included Company A's orders, purchase orders, and inventory records, as well as its scheduling, payroll, and accounting records, on a computer program called Retail Flooring Management System ("RFMS").   As an accountant and Director of Administration, WILLS had access to RFMS and was authorized by Company A to manually enter information into RFMS that accurately reflected the company's legitimate business and payroll transactions.

13.   WILLS further had access to Company A's First Merchants bank accounts and was authorized to make ACH transfers and approve electronic payments from the accounts for legitimate business expenses only.

## The Scheme to Defraud

14.   Beginning in or about August 2020, and continuing until at least in or about February 2022, WILLS devised and executed a scheme to defraud Company A by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, as further described below ("Scheme").

15.   The objective of the Scheme was for WILLS to enrich himself by obtaining money belonging to Company A for his own personal use.

16.   As part of the Scheme, WILLS abused his position of trust as an accountant and Director of Administration for Company A by transferring funds to which he knew he was not entitled from Company A to himself for his personal use.

17.   It was part of the Scheme that WILLS caused ACH transfers of Company A's

funds, to which WILLS knew he was not entitled, from Company A's First Merchants Operating Account to Company A's First Merchants Payroll Account and then to WILLS' Personal Bank Accounts for WILLS' personal use. WILLS did so without the knowledge, consent, or authorization of Company A.

18. For example, on or about September 24, 2021, WILLS transferred $10,360.77 from Company A's First Merchants Payroll Account ending in 0262 to WILLS' personal checking account ending in 0246.

19. It was further part of the Scheme that WILLS caused the transfer of funds to which he was not entitled from Company A's First Merchants Operating Account to WILLS' Personal Credit Card Accounts to pay off his outstanding personal debts. WILLS did so without the knowledge, consent, or authorization of Company A.

20. For example, on or about May 21, 2021, WILLS transferred $25,115.93 from Company A's First Merchants Operating Account ending in 0238 to WILLS' Chase Bank credit card account ending in 9531.

21. It was further part of the Scheme that WILLS caused the transfer of funds from Company A to WILLS' PayPal Account. WILLS did so without the knowledge, consent, or authorization of Company A. WILLS used the following means and methods:

   a. WILLS transferred funds from Company A's First Merchants Operating Account to Company A's PayPal Account, and then to WILLS' PayPal Account;

   b. WILLS linked his Company A Citibank Employee Credit Card to Company A's PayPal Account, incurring charges to his Company A Citibank Employee Credit Card to fund Company A's PayPal account, and then transferred the funds to WILLS' PayPal Account;

    c.    WILLS linked a Company A Citibank Employee Credit Card belonging to another Company A employee to Company A's PayPal Account, incurring charges to that employee's Company A Citibank Employee Credit Card to fund Company A's PayPal Account, and then transferred the funds to WILLS' PayPal Account.

22.    WILLS used these fraudulently obtained funds from Company A in WILLS' PayPal Account for his own personal use, including for online gambling. For example, on or about December 14, 2020, WILLS transferred $10,000 from Company A's First Merchants Operating Account ending in 0238 to Company A's PayPal Account and then to WILLS' PayPal Account. On or about December 17, 2020, WILLS transferred $10,000 from his PayPal Account to WILLS' account with Huntington Bank for WILLS' personal use.

23.    It was further part of the Scheme that WILLS misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence of the Scheme, the purposes of the Scheme, and acts done in furtherance of the Scheme.

24.    For example, WILLS made false entries regarding these transactions in RFMS, including but not limited to: WILLS recorded in RFMS that transfers of funds were payments of invoices, when in fact the transfers of funds were transfers to WILLS. The false entries in RFMS had the effect of misstating the balances of several of Company A's accounts, including Company A's cash on hand, inventory, and cash accounts.

25.    To further conceal his theft, WILLS took out a draw against Company A's First Merchants Bank line of credit beyond the draw that had been authorized and approved by Company A. Specifically, on or about December 16, 2021, WILLS obtained a principal advance of $80,000 from Company A's line of credit. WILLS did so without the knowledge,

consent, or authorization of Company A.   WILLS transferred these funds to Company A's account in order to meet Company A's payroll obligations and to pay a vendor.

26.    WILLS made misrepresentations of material fact to Company A's Owner regarding Company A's line of credit at First Merchants Bank, including but not limited to, stating that he had written and sent checks to First Merchants Bank to pay the outstanding balance of the loan, when in fact he had not done so.

27.    As a result of the Scheme to defraud, WILLS caused the clearing of approximately 120 electronic transfers totaling at least $952,237.06.   WILLS used the funds belonging to Company A for his own personal use, including to fund his gambling activities.

## COUNT 1
Wire Fraud
18 U.S.C. § 1343

28.    Paragraphs 1 to 27 are re-alleged and incorporated herein by reference.

29.    Beginning in or about August 2020, and continuing until in or about February 2022, in Madison County, in the Southern District of Indiana,

NATHANIEL WILLS

Defendant herein, having devised a Scheme or artifice to defraud and for obtaining money by means of false or fraudulent pretenses, representations, or promises, as described in Paragraphs 1 through 27 above, did, for the purpose of executing such Scheme described above and attempting to do so, cause to be transmitted by means of wire communication in interstate commerce the signals and sounds described below:

| **On or About Date** | **Description of Wire Communication** |
|---|---|
| May 21, 2021 | $25,115.93 from Company A's First Merchants Operating Account ending in 0238 to WILLS' Chase Bank credit card account ending in 9531 |

All of which is in violation of Title 18, United States Code, Section 1343.

## **FORFEITURE**

30. The allegations contained in Count 1 of the Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

31. Upon conviction of the offense in violation of Title 18, United States Code, Section 1343 set forth in Count 1 of this Information, the defendant, NATHANIEL WILLS, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

32. Further, upon conviction, the United States will seek an order of forfeiture in the form of a money judgment of $952,237.06, representing the amount of proceeds the defendant obtained from wire fraud as charged in Count 1.

33. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

    All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

ZACHARY A. MYERS
UNITED STATES ATTORNEY

By: *(signature)*
Meredith Wood
Tiffany J. Preston
Assistant United States Attorneys
::KMS

By: *(signature)*
Kyle M. Sawa
Chief, General Crimes Unit